This is United States v. McFaul. Ms. Zemiroski, when you're ready. Ms. Zemiroski May it please the court, my name is Rachel Zemiroski. I'm representing Willie McCall, who's the appellant in this case. This case is about an extraordinary sentence in an otherwise un-extraordinary case. We maintain that the district court judge in this case made two errors in sentencing Mr. McCall. First, the district court judge made a procedural error in failing to adequately explain the extent of the upward variance, which, as the court is aware, was an upward variance of 83 months from Mr. McCall's otherwise applicable advisory guideline range of 30 to 37 months. The district court judge imposed a 10-year sentence. And second, we maintain that the 10-year sentence that was imposed upon Mr. McCall is also substantively unreasonable insofar as the extent of the upward variance in this case is unsupported by the record. And quite simply, it is too high to adequately serve the 3553 factors in this case. Can I ask you a question? In your substantive reasonableness argument, you cite our Diamond case about relying on the fact that a defendant is from out-of-state in sentencing. What is your position if the district court, in fact, if we think the district court did rely on the fact that this defendant was from out-of-state in crafting a sentence, does that make the sentence substantively unreasonable? Does it make it procedurally unreasonable? Your Honor, if the district court, if this court finds that the district court judge relied on a prohibited factor, I believe that that could render the sentence both procedurally unreasonable and substantively unreasonable to the extent that the sentence would be based on prohibited facts that the district court judge isn't allowed to consider. Okay, and is it your position that the district court did, in fact, rely on a prohibited fact in sentencing? I believe that the district court judge relied upon a fact that was not reflected in the record at sentencing, and I also... Well, he is from out-of-state. He is from out-of-state, Your Honor. Did the district court rely on that in sentencing? I believe that the district court judge did rely on that in sentencing. Is the district court allowed to rely on the fact that a defendant is from out-of-state? There is authority as the... As you cited in your brief. I don't know. I don't want to try to make you make an argument, but you cited in your brief. That's how I got it. Certainly, Your Honor. Yeah. I argue that the district court judge is not allowed to consider, at least as an overwhelming factor in terms of... Does Diamond say a district court can consider it a little? No, Diamond does not say the district court can consider it at all. Why aren't you just arguing you can't do this under Diamond? Your Honor, I think that a district court judge can take into account all of the circumstances of the defendant. But when the district court judge... So, Diamond is wrong? I do not believe Diamond is wrong, Your Honor. I believe that when the district court judge cited in this case the mere fact that he's out-of-state and used that as a basis for an upward variance, that that was prohibited under Diamond. And is essentially the concerns of parochialism that Diamond stressed. I don't want to argue that the district court judge can never consider where a defendant is from on the whole in terms of the 3553A factors, because I do think that there are circumstances in which a defendant's state of origin could be relevant. But to the extent that it is being used as a proxy for culpability, I think that the Diamond case is very clear that it should not be considered in that way. And I think that is where the district court erred in this case. Can you explain to me how you square Diamond with McGee, where the court seems to do a very similar idea? With respect, I think that's also a drug case. And we affirm the justification of a sentence in part based on this idea of bringing drugs in from out-of-state. In McGee, I believe that the opinion also went on to stress that it was concerned about some of the language the district court used in that case. Absolutely. Concerned, but affirmed the judgment below, saying in that particular context, the drugs being brought in from out-of-state, that that was a factor the court could rely upon. And in this case, there is no evidence that the actual drugs that were involved in Mr. McCall's case were in fact from out-of-state. I get that. What I want you to help me with, because I think I'm struggling a little bit with the same issue that Judge Harris is, is how do I put McGee and Diamond together, right? I mean, I don't think McGee gets rid of Diamond for obvious reasons. But McGee does exist and sort of seems to address a slightly different question than Diamond. And specifically, the court finding that the bringing of drugs in, you know, those drugs into the state was, you know, an aggravating factor at some level justifying the sentence. And McGee says that's fine. Diamond says you can't base it just on where someone's from, right? But tell me how you read those two together. My argument would be that this case is certainly closer to Diamond than McGee in terms of the actual factual scenario that was presented to the court. Well, but McGee is bringing drugs from out-of-state into state. I mean, the factual argument to me seems harder, because that's actually bringing drugs into the state. Which was proven in McGee and not proven in Mr. McCall's case. And I would also note- Can I jump in? Because I think we are both wrestling with the same question here. I thought McGee said it was ambiguous in McGee whether the district court was focused on where the defendant was from or where the drugs were from. And so you could read it as this is a district court who would have imposed the same sentence on an in-state resident bringing in drugs. And that it's okay to look at where the drugs are from. You just can't look at where the defendant is from. Where the actual defendant is from. And my concern is that in the- I mean, I think it's pretty clear from the transcript. But even in the written statement of reasons, when the court has a chance to think about this, he says the point is to deter the defendant and other person's intent on a legal gain from entering West Virginia. Exactly. This seems like it's about where the person is from. Where the person is from, which is an immutable characteristic that Mr. McCall cannot change. And that is also something that could be used against any defendant that comes into the Southern District of West Virginia from another state. Used to exponentially increase their sentence. But also like McGee, the problem here- The problem is that like McGee, there's ambiguity. Because the judge also says, no, no, no. I'm not doing this just because he's from out of state. And that's at 153. No, he's- Right? Where he says he's not being sentenced because he is from Detroit. Right? I mean, it's sort of- I think he's saying I would have sentenced him whichever other state he's from. This isn't about Detroit. Well, but he- before that, he says he's not intended to in any way reflect any prejudice against the defendant's state of origin. Not just- this isn't- I don't have a thing about Michigan. If he were from New Hampshire, I'd give him the same sentence. And, Your Honor, the district court judge, he did make that argument after I stood up and I objected. And I told the district court judge that it sounded to me like he was sentencing him based on his state of origin. And that was when the district court judge gave that explanation. I mean, I feel like it seems clear to me, at least from the transcript, that people understood it that way. Because even after that colloquy, the government is still saying, you need to give him a high sentence because people come from out of state to sell drugs for profit. So it doesn't look to me like the defendant being from out of state was taken off the table. I agree, Your Honor. And the district court judge, when he was going through his colloquy and sentencing Mr. McCall, he emphasized several times the price differentials between the cost of methamphetamine in Detroit versus the cost of methamphetamine in West Virginia. And essentially very much set forth a basis for sentencing Mr. McCall, a basis for the substantial upward variance that was couched in his state of origin, which is a factor that he should not be considering. If you lose on the procedural issue, can we still give you relief under the substantive prong? I believe so, Your Honor. I believe that under either prong, this court can and should vacate the sentence that was given to Mr. McCall and remand for resentencing. Again, whereas here the district court judge either relies on a prohibited factor or on erroneous factual determination or simply gives too much weight to a particular factor without providing an adequate explanation, then I believe that this court can evaluate the sentence for reasonableness and vacate it. What is your best argument for substantive unreasonableness? When the district court judge imposed the significant upward variance in this case, Gall teaches us that in order to vary as high as the judge did here, that the district court judge has to offer a concomitant explanation that justifies the extent of the upward variance. And here, there is simply not a strong explanation for why Mr. McCall should be subject to a sentence that is three times the top of his advisory guideline range. Quite simply, the sentence in this case is unjustified. It wasn't adequately explained below. Could the district court, and I readily concede the district court did not do this. I'm asking, could the district court? The district court had this extensive discussion about the large quantity of methamphetamine that was found in the apartment with the guy. And ultimately made the finding that it was not properly attributable under the guidelines to your client. Could the district court have said, listen, I find that it's not properly attributable under the guidelines. But as one of the 3553A factors, I consider the fact that maybe it's not, you know, doesn't qualify on the guidelines, but I consider the fact that he's affiliated with folks that are bringing large quantities and they've got guns. And so that affiliation, although maybe he's not responsible for it, that is part of what justifies my upward variance. Could he have done that? Your Honor, I would argue that he would not have been able to do that. Why? Because in order to sentence a defendant, the information before the court has to be both proven, reliable, accurate. A defendant has a due process right to be sentenced on the basis of reliable and accurate information. Well, it was proven that the drugs were there. It is reliable that they were there. The only part of this to question, right, is his relation. Because there's no doubt the drugs were there, the gun was there, and he has some connection with it. It's not sufficient to hold him responsible, right, under the guidelines. That's correct. What I'm asking is, I agree, it's got to be relevant, it's got to be proven, right, but if the judge had said, listen, I don't find that it's attributable, but I am considering his affiliation, whatever that affiliation is, as part of my sentencing hearing. Again, Your Honor, I would argue that that is simply inappropriate. The evidentiary standard that the government has to meet in order to attribute criminal conduct to another party is preponderance of the evidence. But that's just for the guidelines, right? I mean, 3553A factors don't require preponderance of the evidence, right? Lawyers get to stand up and just say history and characteristics of the defendant and all these other things. They get to describe those things without an evidentiary burden, right? The court gets to consider those things more broadly without a preponderance of the evidence standard, right? 3553A doesn't require preponderance of the evidence, it just requires consideration of those things. And so what I'm getting at is, and he didn't do it here, right? That's correct. And probably the answer is we shouldn't opine one way or the other, but I'm interested in whether he could have, because it seems to me that that might have been part of the motivation here to go up so high. I mean, the history and characteristics, when you stand up and you proffer those things, they're usually readily provable. You have backing up information for the things that you're saying. Just to intimate that someone is tangentially related to criminal conduct and then using that as a basis for an upward variance, particularly an upward variance of this magnitude, I would argue, would be extremely inappropriate and violate due process. If the government cannot prove that Mr. McCall was criminally involved with the contraband that was discovered in that house, it should not be used against him at sentencing, either under the guidelines or under the 3553A factors. Again, the government has a burden. It failed to meet that burden in this case, and therefore the actual proven facts that were before the district court judge in this case, the ones that he relied on, are just simply inefficient for the extent of the upward variance in this case. Why wouldn't you argue, well, my client got 10 years for selling just $100 worth of drugs? I tried to argue that, Your Honor. Okay. Is there any other questions? Thank you very much. Yes, sir. You have some rebuttal time. Mr. Bogus, did I get that right? Close, Your Honor. Close, okay. Bogus. Bogus. I'm sorry. That's okay. I've been called worse. May it please the Court, my name is Tim Bogus, and I'm Assistant United States Attorney for Southern District of Western Virginia, and I'm representing the United States. I would say that the sentence imposed by the district court was both procedurally and substantively reasonable in this case. In imposing the sentence, the district court obviously considered the 3553A factors. He considered arguments of counsel and the defendant. He bases a sentence on the individualized assessment in this case, and he sufficiently explained the sentence. Let me interject there. Yes. So the 1.1 grams of meth that he sold, you all classified that as ice, right, for guidelines purposes? I don't know if that was or not, Your Honor, to be perfectly honest. It was ice that was found in the apartment. It had to be ice, otherwise it wouldn't have been a level 16, right? Well, he also had $1,300 on him when he was arrested that was converted to drug weight. The $1,300 that was recovered from him when he was arrested was converted to drug weight and was additional amounts of methamphetamine. So that's what I'm trying to get at. Do you know the answer? Was it considered a mixture in substance containing methamphetamine, or was it considered ice for guidelines purposes? And or do you know what it actually was? Either answer is fine. I know that it was methamphetamine. I do not know if the 1.1 gram, I'm sure it's in the precinct report. It's not. That's why I'm asking it. It may not have been tested. The state laboratory tests and does not test for purity, but the larger amounts are often tested. It was not tested for purity. If it was tested for purity, I wouldn't be asking those questions. Then it would be counted as regular methamphetamine. Okay. And so the question I've got is really about this idea of the drugs being brought in from out of state. And if it's not, I'm having a little trouble figuring out what the basis for that determination was. So if it was ice, I can understand the idea because ice is probably not manufactured in West Virginia. It's brought in primarily across the border. But if it's not ice, so if it's lower quality methamphetamine, then it may well have been made in West Virginia. That's why I'm struggling here. If it was ice, then at least there's a factual basis for believing it was brought into West Virginia. But if it's not ice, which I think you're suggesting that that's the only record we've got, I don't even understand how the district judge could make the determination under McGee that it was brought in from out of state. Your Honor, I think it goes back to some questions that you were asking Ms. Zimerowski as well. And that's whether or not the judge could consider other factors. No, no, I don't want to go to other factors yet. Stay with me on this factor. What is the evidence that this methamphetamine, the 1.1 gram, I'm not talking about the large quantity in the apartment, the 1.1 grams, what is the evidence that suggests even that that was brought from out of state? Again, it would go to... If the answer is nothing, just say it, right? I'm not trying to fight you here, but you're an officer of the court. If the answer is there's nothing to support that other than where this guy was from... There was no direct evidence of that in this case. What I would say is historically what we are finding in the Southern District of West Virginia is that there is typically no methamphetamine manufactured. So does that mean that everybody gets 10 years from this judge when they sell meth in West Virginia? No, not everybody does, Your Honor. Well, why not? Not everybody is the same history and characteristics of this defendant. Is there always a substantial upward variance because he always assumes the meth came from out of state? There is not, Your Honor. Okay. Isn't there like a sentencing disparity issue here that was never discussed by the judge? Why didn't he discuss that under 353? You know what I mean. 3553. Yeah, thank you. Yeah, why didn't he? I mean, obviously, if you're going to just give a higher sentence to people from out of state, you're going to end up with some really weird sentencing disparities. That's never discussed. We're in a unique situation in the Southern District of West Virginia where we are inundated. We have one of the highest rates of substance abuse addiction. I think it's maybe sort of the same question as Judge Richardson's. Why this guy? Why was he the one who got singled out to address this problem, which I am not denying at all? Because Ms. Imorowski is focusing solely on the Detroit aspect of the sentence. No, no. I'm asking you where does the judge explain to me why is fine. There's this huge problem in West Virginia. A lot of the meth that's being sold in West Virginia is coming from overstate lines. I'm picking this guy. He's getting 10 years to fix this problem. Because the judge also looked at other history and characteristics of this defendant other than just from being from Detroit. He looked at his criminal history. Yeah, what about his criminal history? Which was very violent. You said that it was, you told the judges his criminal history, Category 5, underrepresented his criminal history. In what way? That is correct. Because you could have crimes of embezzlement, mail fraud, and nonviolent crimes, grand larceny. It could still ultimately be a criminal history 5 with other nonviolent crimes. And you could still end up a criminal history 5. In this case, it's pretty clear that the defendant's first conviction was before he was even an adult, but he was prosecuted as an adult, and it was for carjacking and assault to commit murder. Well, that's a bit of a double-edged sword, right? Because the defendant argued that that showed that criminal history 5 overrepresented his history since one of those was a juvenile conviction. It was an adult conviction. I'm sorry, committed as a juvenile. Adult conviction committed as a juvenile. And did the district court address that as sort of a potential mitigating fact? I'm not sure if he did because the fact is is that when he made parole on that charge, and while he was on parole, he committed his second felony offense, still yet, while he was a relatively young man, for distribution of controlled substances. He was sentenced to 12 months on that case and served six. I got his history. He got out, and then he committed another felony, possession of drugs charge. So it's the government's position that this is a particularly egregious category 5 history. It is, Your Honor. And there were two different times in his history that while he was on parole, he committed his next crime. When he committed the crime in West Virginia, he was on parole in the state of Michigan. When he came down to West Virginia, our position was that he was coming to West Virginia to sell drugs. There was no evidence in the pre-sentence investigation report that he had any association or ties to West Virginia. Let her answer her question. Did the district court explain this in relying on his criminal history? He did in that he adopted the findings and the facts of the pre-sentence investigation report, which are all part of the record. He adopted those and found those as facts that he's relying upon for his sentencing. The criminal history is set out pretty clearly in the pre-sentence investigation report. But did the district court say what he found, why he found that the criminal history, why it found that the defendant's criminal history was not adequately reflected in the category 5? I know that Ms. Zimerowski argued that, said that it was already represented. I also argued that it was somewhat underrepresented. And I'm not faulting you. The district court, I mean, I've read the colloquy. The district court didn't really let you get out more than about a sentence. So nowhere in the sentencing hearing do I see an explanation for what's going on on the criminal history. But am I missing something? I don't know that he specifically represented it as that he did not, unless he just said he found that it did not. He just had the conclusion. He had no analysis.  But he did talk about it. Can I go back to the, and I know we've gotten off on the criminal history, but I want to go back because when we transitioned to Judge Harris's question, you began by saying that there's no meth manufactured in West Virginia. I'm not going to say that. That's not possibly true, right? I need to back up a little bit. Most of the cases we are finding, there may be some people manufacturing meth in West Virginia. The majority of the meth, especially when we find large amounts, is typically that that's coming. Really, the best metric there is high quality because what they're not doing in the Southern District of West Virginia. Is making high quality. Is making high quality meth, right? What they're doing is they're shaking bacon, making 30 percent pure junk, right? But here's what my problem is. That's what you've got, right? So the 1.1 gram isn't this high quality Mexican imported, you know, high grade ice, right? At least what the record reflects is what you've got is 1.1 grams of junk. Exactly the type of stuff that gets manufactured in the Southern District of West Virginia on a regular basis. I cannot say 110 percent whether it's junk or whether it's ice. For the reason being that. It wouldn't categorize that way, right? So nothing in the record suggests that it was ice. And what I was explaining, the West Virginia State Police Crime Lab who would have tested the 1.1 gram does not test for purity. Totally get it, right? And I understand, you know, a failure of proof doesn't necessarily mean what it is. But what we've got before us is that it was not categorized as high quality, right? Which means. That is correct. Which means it is far, far more likely that it was manufactured in West Virginia than somewhere else. Because nobody imports the low quality meth. They import the high quality meth because it's worthwhile. But the low quality meth that some guy's making with a two liter bottle out back. Like that's not moving state to state. It's being made in the backyard. I don't think that just because it's not established that it was ice that we can say that it was absolutely junk. Or that it was manufactured in the state of West Virginia. But you certainly can't say that it came from out of state. That is correct. Which means there's no factual basis to support the judge's conclusion that the drugs came from out of state. Which means. So there are only two possibilities, right? The judge either found the drugs came from out of state under McGee. And that's really terrible. And so we, you know, need to punish that. And that might well be an acceptable outcome if the facts supported it. But that's. I think we've established the facts don't support that. So then we're left with only one other possibility. And that is that he did it because the person was from Detroit. And that's what Diamond tells us. Like that's problematic, right? I mean, we're concerned about. If you're talking about the problem of drugs flowing into the state. I get it. That's McGee. And maybe that's a perfectly reasonable thing to do. But if you're just basing it. And since there's no evidence the drugs came from out of state. You're just basing it on where the guy's from. That seems to me to be broadly problematic. He's not basing it just on where the guy's from. He's also basing it on the defendant's criminal history. Put that aside though. I'm talking about this issue, right? He bases it on two issues. Criminal history and the problem of drugs being imported. Or the problem of people from Detroit coming to West Virginia. It's one of those two. We've established there's no evidence for the former. So it seems like it has to be the latter. And on this aspect. That would suggest to me that he relied on an improper factor. It may well be justified. He may on remand or another judge on remand. May well be able to justify based on the specific facts of the case. That a high sentence or a low sentence is justified. We're not involved in that. What I'm concerned about is that he relied upon something. To do with out of state interaction. And we've established there's no evidence the drugs came from out of state. And so that only leaves us with the conclusion. That he relied on the fact the guy was from Detroit. Which by the way is bolstered by his written explanation of the sentence. Where he says it's because the defendant entered West Virginia. And he entered West Virginia. I don't mean to be yelling at you by the way. I've been there. And I'm not at all that. But it is a frustrating position to be in. I agree. But I would also reiterate some of the questions that you were asking. About whether or not the judge could also consider. We still have evidence that the defendant. Immediately prior to the drug transaction. Entered the apartment. But the key. But stop there right. I'm happy for you to talk about anything you want to. But you agree that if we find. That the district court improperly relied upon. The home residence of the defendant. We're not going to sit up here and weigh the 3553A factors anew. Based on what we gather from the record. Right. If we find that that was improper. We make that single finding. And it goes back. And somebody who does this on a day to day basis. Actually weighs those 3553A factors. Right. And what I was. I answered that question. Right. Yes your honor. What I was getting at though. Is the court could consider. Some of those aspects about that apartment. Based upon 3661. Which says there's really no limit. As to what the judge can consider with sentencing. And the United States sentencing guideline 1B1.4. Which also puts that there's no limit. But we have cases saying that. I thought we had cases saying. I'm not going to be able to find the quote. But that you need a preponderance of the evidence standard. For all sentencing. That all sentencing decisions have to be based on. Facts that are shown by a preponderance of the evidence. Is that not right? It is a preponderance of the evidence. I'm just saying that the court can still consider the fact. That the defendant nonetheless. Entered that apartment. Entered the apartment. Okay. And immediately left that apartment. And went to the controlled drug buy. Right. The preponderance of evidence. Is that he has an affiliation with it. Correct. Not what you don't have is a preponderance of evidence. That he's responsible for it. That is correct, Your Honor. Why is it substantive. All these other factors aside. Why is it substantively reasonable. That a guy gets four times. Almost four times the guideline range. For selling 1.1 grams of meth. Well. There was more than 1.1 grams. By the time that the money that was recovered from him. That he had on him. Without any sources of employment. Not a whole lot more though. It's $1,300. Which isn't a lot of meth. It's about a hundred. He sold his gram for $100. So it would be about 13 grams. And it's not the money that's causing the problem. It's the drugs. It's the drugs. That is correct, Your Honor. It's still substantively reasonable, Your Honor. Because the judge did not abuse his discretion. And still factoring and considering the 3553A sentencing factors. He did want to make sure that it was a just punishment for this offense. He wanted to make sure that there was a deterrent effect for this defendant. Especially looking at his criminal history. And as well as for other defendants. And he also wanted to protect. And he was very clear in his record. That he wanted to protect the public. From further actions of this defendant. Which is also very clear from the fact that the defendant committed. At least two subsequent felony convictions while on parole. On other offenses. Which is something that is clearly within the judge's province. To be able to factor into his sentencing factors. But the district court didn't say that, right? Is there anything in the district court where he says I'm very concerned. Because he committed two prior felonies while on parole. That is part of the recent investigation report. But you're asking us to assume all kinds of things. This is why district courts have to explain their sentences. We're not allowed just to assume if it's in the PSR. That must be what he relied on. Well, that's why the courts have continuously upheld. That the sentencing judges are the best position to sentence these defendants. I take it your argument there is some version of. That was the arguments that were made by you. The PSR was before the court. Having considered and engaged in that discussion. When the court says that I find the criminal history to be significant. Or aggravating or whatever the exact language. That that's sort of implicitly making that conclusion. Yes, Your Honor. Well, I mean we'll sometimes say that when it's on the sentencing transcript. But is it. And I really may be missing it. Is it your position that the government had this discussion with the judge. At sentencing that the two prior convictions were committed while on parole. Because I didn't see that. I know that there was at least one reference that I mentioned in my. That the current offense was committed while under parole. But not the prior ones, right. And the fact that the current one was committed while on parole. Is already part of how he got to Category 5. And then there is within the present investigation report. But it wasn't discussed with the judge. It was not discussed with the judge. I want to go back to Judge Floyd's question. Because this is something and I. This is something I find difficult to sort of wrestle with. And this was a huge departure. Relatively speaking. And I finally found what I was looking for. That even if you give him the full 15 grams here. He got. He went up to the offense level that you would get for 500 grams. So this is like a very substantial upward variance. And sort of what I'm getting from reading the transcript. Is that it was mostly this idea of deterrence. And I want to put to one side for one minute. Whether you're even allowed to think about deterring people from coming in. From out of state. But even if it were just the drugs from out of state. It was sort of like I want to make an example of this guy. This is the guy. I'm sick of what's going on. And so I'm giving him 10 years. I sure hope word gets back to Detroit or wherever he's from. It just seems to me that if that's the rationale. There really ought to be some discussion about disparities. Like how do you pick out one person to send your message. Like how is that fair. That this one guy is going to carry on his back. This major variance in the hope that kind of word will get out to the world. And don't you have to at least discuss sort of the disparity question. Unless you're really giving this to every out of state defendant and or. Again, I don't want to get into the diamond issue. Every time you think the drugs are from out of state. I know that my time is about up. Is it okay to go ahead and answer this question? I just didn't want to run over my time. He did not address necessarily the disparity. That's clear as you're indicating. And hindsight is 20-20. I wish I would ask the question now about judge. Let's address the disparity in sentencing. But I did not do that. But in looking at that. I think we've got to focus on more than just the Detroit thing. There is a deterrent effect. There are many drugs funneling into West Virginia from outside sources. He's trying to deter that activity. Deter that activity for this defendant in particular. And sentence him based upon his criminal history. And protect the public from further actions of this defendant. Which is pretty clear in the record. That that's what he was doing. If you have any other questions, I'll be happy to answer them. Thank you very much. She's been arrested. Your Honors. I just have a couple of points that I wanted to respond to. Mr. Boggess was correct. That there was no proof that the methamphetamine that was actually distributed by Mr. McCall. Was what is known as ice. Any substantial purity. There was actually evidence that it most likely was not. Based on the price that it was sold for. Versus the average price of high purity methamphetamine. But more importantly on the post hoc attempt to justify this sentence. By pointing to Mr. McCall's criminal history. I don't believe that it holds water frankly. He did have a criminal history. The district court judge addressed that. We addressed it as well in terms of how. That it was reflected in his criminal history category. That he received the two extra points for being on parole at the time of this offense. Can I ask a question? I want to very expressly tell you. You don't have to answer this. Because I know you get to go back to West Virginia. Do you think that it is necessary. Appropriate or have no opinion. Of whether the case. If reversed on the ground that we focused on here. The out of state issue. That the case would need to be reassigned to a new district judge. Your honor. I was actually researching that issue. I believe that it is something that the court can do. And I would be pleased if the court did that. If that answers the court's question. Thank you. I also want to note. And I believe that Judge Harris picked this out from the transcript. That when the judge is talking about the extent of the upward variance in this case. He does mention criminal history. But he is far more focused on the Detroit aspect of this case. And again, there is just simply no evidence about where the methamphetamine. That Mr. McCall was actually found to be accountable for was from. And so the only thing that you could possibly be left with. As a grounds for an upward variance. Would be the fact that he himself is a person that is from Detroit. Again, that is simply inefficient. And in my opinion, unfair. To rely on that factor in imposing such a huge upward variance in this case. Again, I want to point out that his criminal history. He was 15 years old when he committed that first offense. Which he was given criminal history points. Counselor, I'm sorry. Can I just ask you a question? I think this would be very helpful for me to know. You just said that relying on the fact that he's from Detroit. Would be inefficient and a bad reason to give such a big variance. So I still see you sort of not wanting to argue. You just can't do that. What is it you're trying. You seem to have a concern about a rule that would say. You're not allowed to take into account for a big variance. A little variance. Not at all. That this guy is from Detroit. What is the concern that you want us to be careful about? My concern, your honor, is what I'm thinking of in the future. In terms of if I have a client that is from a blighted city. And I believe that the court should take that into consideration. How they grew up. Their own circumstances. Perhaps even the reasons why they traveled. And that is why I do not want to say that categorically. That it is always irrelevant. But I would maintain that categorically. It is not a reason to vary upward. Well can't it be categorically. Because I think this is what we said in Diamond. So it's not really up to us anymore. The fact that someone is from out of state. Yes. And coming into your state to commit crimes. Is not something you can rely on. Yes. And I very much agree with that position. Thank you. Because now I understand the concern. Does the court have any other questions? I think not. Thank you so much. Thank you. Ask the clerk to adjourn court. Signed, Dye. And we'll come down and recount. This honorable court stands adjourned. Signed, Dye. God save the United States and this honorable court.
judges: Henry F. Floyd, Pamela A. Harris, Julius N. Richardson